FILED

December 14, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 11:02 AM



## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE BY INTERCHANGE

| | |
|---|---|
| Katherine McMillan,<br>　　　　Employee,<br>v.<br><br>Kentucky Electronics, Inc., d/b/a<br>Precision Industries, Inc.<br>　　　　Employer,<br>And<br><br>The Hartford,<br>　　　　Insurance Carrier/TPA. | )　Docket No.:　2015-06-0523<br>)<br>)　State File No.: 50101-2015<br>)<br>)<br>)<br>)<br>)<br>)　Judge Robert Durham<br>)<br>)<br>)<br>)<br>) |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing (REH) filed by Katherine McMillan, the employee, on October 26, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the employer, Kentucky Electronics, Inc. (KEI), is obligated to provide additional medical benefits.

The dispositive issue is whether Ms. McMillan sustained an injury that primarily arose out of and in the course and scope of her work-related accident on June 19, 2015.[1] The Court finds the evidence submitted by Ms. McMillan is sufficient to establish she is likely to prevail at a hearing on the merits with regard to her entitlement to additional medical benefits.[2]

### History of Claim

Ms. McMillan is a fifty-five-year-old resident of Sumner County, Tennessee, who worked as a sorter for KEI. (T.R. 1 at 1.) She testified that on Friday, June 19, 2015, she attempted to scoot a pallet with a large, empty box on it by pushing the box. As she

---

[1] The parties stipulated temporary disability benefits were not an issue at this time.
[2] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.

pushed the box, it slid across the pallet. She tripped over the pallet and fell to her knees, while her momentum continued to push the box forward with her hands still on top of the box, causing her to arch her back. Ms. McMillan then released the box and fell all the way to her stomach with her arms outstretched. She testified she immediately felt pain in her knees and her right side, but the pain went away after a few seconds.

Pam High, Ms. McMillan's co-worker, testified she witnessed the fall and helped Ms. McMillan to her feet. She asked Ms. McMillan if she were hurt, and she replied she was not. Ms. High testified Ms. McMillan raised her shirt to look at her stomach, and she observed that it did not appear bruised or scratched. Despite Ms. McMillan's assertion that she was uninjured, Ms. High urged her to file an accident report as required by company policy.

Ms. McMillan testified she then went to her supervisor and completed an accident report. In the description of her injury, she noted, "My knees went to the floor. It was red and my stomach hurt a little. I was still holding the box when I fell and also hurt my lower back." (Ex. 7 at 2.) However, she did not seek medical attention and finished out her shift.

Ms. McMillan did not work over the weekend. When she returned the following week, Ms. High asked her how she was feeling. According to Ms. High's testimony, Ms. McMillan told her she was feeling well except that she had tripped over a mop bucket her friend had left on the floor at home. Brenda Kepley, a supervisor for KEI, testified Ms. McMillan also told her on June 22 or June 23 that she tripped over a mop bucket at home, resulting in pain.

Ms. McMillan testified she did not trip over a mop bucket over the weekend in question; however, she did bump into a kitty litter box, causing her to bruise her ankle. Her friend, Fred Hamilton, testified no one mopped the floor that weekend and he did not see or hear Ms. McMillan fall; however, she did show him her bruised ankle from tripping over the kitty litter box.

Ms. McMillan testified she worked the entire week of June 22 through June 26, but began experiencing pain in her right abdomen that continued to worsen. While shopping on Saturday, June 27, the pain became so intense Ms. McMillan decided to seek treatment at Sumner Regional Medical Center to determine if her pain related to her appendix.

According to the ED Physician Documentation form, Ms. McMillan presented with right-sided abdominal pain that "began/occurred gradually three days ago, and became worse this morning." (Ex. 1 at 1.) The record initially reported Ms. McMillan stated she "had a dull ache that she attributed to having a cold and coughing," but which had worsened. *Id.* However, the next sentence states, "[p]atient states that the pain

started after a fall at work. She denies any injury to her abdomen." *Id.* Furthermore, the Physician Documentation form concludes with a "correction" indicating the sentence, "[p]atient states that she has a dull ache that she attributed to having a cold and coughing, but then it became worse today," was deleted from the chart. (Ex. 1 at 3.)

While at the emergency room, Ms. McMillan underwent a CT scan of her abdomen, which revealed an "approximately 4 x10 cm lower RIGHT rectus sheath hematoma." As a result, the hospital admitted her overnight for observation. According to the admission report, Ms. McMillan "was at work on Monday and twisted her body. She was fine after that, but as the week progressed, she noted RLQ pain that was getting progressively worse." (Ex. 1 at 6.) The file also contains a "Report of Consultation" that states Ms. McMillan had an "awkward twisting fall yesterday and began having lower abdominal pain." (Ex. 1 at 11.)

Ms. Kepley testified Ms. McMillan called her while she was at the hospital and told her she had fallen at work the week before. (Ex. 1 at 6.) Ms. Kepley told her this was the first she heard of her falling at work, but she would report it to KEI's insurance carrier. *Id.* The hospital discharged Ms. McMillan the following day, stating she suffered from a rectus sheathe hematoma that "should spontaneously resolve in 1-2 weeks." (Ex. 1 at 15.)[3]

Following her hospital stay, KEI provided a panel of physicians to Ms. McMillan, and she chose Gallatin Urgent Care (GUC). (Ex. 4.) On July 2, Ms. McMillan saw Andrea Reed, N.P., with GUC. (Ex. 2 at 1.) The record noted Ms. McMillan complained of pain following a fall at work on June 19. (Ex. 2 at 1.) Her abdominal pain had improved. *Id.* N.P. Reed marked the box indicating her condition was work-related. (Ex. 2 at 2.) She placed Ms. McMillan on light duty, stating she could return to work on July 2. *Id.*

On July 7, KEI denied Ms. McMillan's claim on the basis that she fell at home subsequent to her work accident, and she failed to establish her injury arose out of and in the course of her employment with KEI. (Ex. 5.) Despite the denial, Ms. McMillan returned to GUC on July 8. (Ex. 2 at 3.) She complained of worsening pain in her right abdomen. *Id.* N.P. Reed again diagnosed her with a hematoma, but recommended she see a surgeon since her pain should have been improving. *Id.* She restricted her from any lifting, pushing or pulling. (Ex. 2 at 4.) Finally, she again noted Ms. McMillan's condition was work-related. (Ex. 2 at 4.)

Ms. McMillan testified she returned to work for KEI until she quit in October 2015, to obtain another job. She further testified her abdominal pain has resolved.

---

[3] The parties did not provide a bill for the hospital visit.

Ms. McMillan filed a Petition for Benefit Determination seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Ms. McMillan filed a Request for Expedited Hearing, and the Court heard the matter on December 4, 2015. At the Expedited Hearing, Ms. McMillan asserted she sustained a job-related injury, and the Court should deem her claim compensable. KEI countered that Ms. McMillan failed to prove her injury primarily arose out of and in the course and scope of her employment. As such, KEI argued the Court should deny her claim.

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[4] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

While the evidence provided by the parties contains inconsistencies regarding several details surrounding Ms. McMillan's injury, the undisputed proof establishes she fell awkwardly to the floor on June 19, 2015, with both arms outstretched and holding to the top of a box. While Ms. McMillan candidly testified she only felt abdominal pain for

---

[4] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

a few moments initially, it was painful enough to cause her to lift her shirt and examine her stomach for marks or bruising. Her co-worker, Ms. High, felt the accident sufficiently serious to warrant reporting it to their supervisor. Furthermore, Ms. McMillan mentioned stomach pain in the report she completed immediately after the accident. (Ex. 7 at 2.)

The evidence at the expedited hearing was inconsistent regarding whether Ms. McMillan tripped over a mop bucket at home on June 20 or 21. However, the Court finds this to be of little consequence. While Ms. McMillan did not admit to telling Ms. High and Ms. Kepley that she tripped over a mop bucket, she did testify to stumbling over a kitty litter box. Furthermore, neither Ms. High nor Ms. Kepley testified that Ms. McMillan specifically told them she suffered abdominal pain as a result of the incident at home. At this time, there is no evidence that attributes Ms. McMillan's abdominal pain to a trip or fall at home on June 20 or 21.

The medical records from Sumner Regional Medical Center are also inconsistent with regard to the progression of Ms. McMillan's symptoms. The Physician Documentation form states Ms. McMillan attributed her symptoms to coughing, and then in the next sentence states she asserted the pain began after she fell at work. (Ex. 1 at 1.) In one section, the medical records also state that the pain began on Monday when she twisted her body; in another section, the records state the pain began three days earlier, and in yet another section, the records assert the pain began when she experienced an "awkward twisting fall yesterday." The Court finds it difficult to give any weight to such disparate accounts within the same set of records; however, when considered together, the common thread appears to be that Ms. McMillan claimed her pain began after falling at work and then progressively worsened, thus generally supporting her testimony at the hearing.

Finally, following her hospital stay, KEI offered a panel of physicians to Ms. McMillan in accordance with Tennessee Code Annotated section 50-6-204(3)(A)(i) (2014), and she chose GUC as her authorized treating physician. (Ex. 7.) In this matter, GUC's records include Ms. McMillan's account that she fell at work on June 19, and in status notes for both July 2 and July 8, N.P. Reed checked the box inquiring whether the injury is work-related as "yes." Furthermore, N.P. Reed wrote the July 8 note the day after KEI issued a Notice of Denial for Ms. McMillan's claim. While N.P. Reed's opinion as to causation might not be entitled to a presumption of correctness pursuant to Tennessee Code Annotated section 50-6-102(13)(E) (2014), the Court considers it a factor in Ms. McMillan's favor in determining whether she is likely to prevail at a hearing on the merits on the issue. Furthermore, KEI provided no expert medical proof rebutting N.P. Reed's opinion as stated in these notes.

Therefore, given the entirety of the evidence, the Court finds Ms. McMillan is likely to prevail at a hearing on the merits in establishing that she suffered from a

5

hematoma that primarily arose out of and in the course and scope of her work-related accident on June 19, 2015. *Buchanan, supra,* at *6. As a result, the Court further finds that KEI must provide a panel of surgeons for the evaluation, and if necessary, further treatment of Ms. McMillan as recommended by N.P. Reed in her July 8 note. (Ex. 2 at 3.) Tenn. Code Ann. § 50-6-204(a)(1)(A).

With regard to Ms. McMillan's emergency room treatment and subsequent hospitalization at Sumner Regional Medical Center, whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654, 656 (Tenn. 1986). In this instance, the undisputed evidence is that Ms. McMillan's abdominal pain suddenly and severely intensified on Saturday, and her condition was of sufficient severity that it warranted an overnight stay in the hospital. (Ex. 1.) Furthermore, Ms. McMillan notified her supervisor, Ms. Kepley, as soon as she could conveniently do so. (Ex. 9 at 5.)

Thus, the Court finds it was reasonable for Ms. McMillan to seek emergent care and submit to hospitalization for treatment of her work-related injury, and KEI is obligated to pay the reasonable and necessary expenses associated with this care in accordance with Workers' Compensation Law. *Buchanan, supra,* at *656.

**IT IS, THEREFORE, ORDERED** as follows:

1. KEI shall provide a panel of surgeons in accordance with the recommendation of GUC for the evaluation, and if necessary, further treatment of Ms. McMillan's work-related injury of June 19, 2015.

2. KEI shall pay the reasonable and necessary medical expenses associated with Ms. McMillan's emergency room treatment and subsequent hospitalization at Sumner Regional Medical Center on June 27 and June 28, 2015, in accordance with Workers' Compensation Law.

3. This matter is set for Initial Hearing on January 27, 2016, at 10:00 a.m. C.T.

**ENTERED THIS THE 14th DAY OF DECEMBER, 2015.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

6

**Initial Hearing:**

An Initial Hearing has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.

Please Note: **You must call in on the scheduled date/time to participate.** **Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal,

7

may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Medical records from Sumner Regional Medical Center;
2. Medical records from Gallatin Urgent Care;
3. The Hartford Physical Demands Analysis;
4. Choice of Physician Form;
5. Notice of Denial;
6. Wage Statement;
7. KEI Industries Injury Report;
8. Affidavit of Katherine McMillan; and,
9. Affidavits of Pam High and Brenda Kepley.


Technical Record:

1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing; and,
4. Transfer Order.


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order for Medical Benefits was sent to the following recipients by the following methods of service on this the __th day of December, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Vakessha Hood-Schneider, | | | X | Vhslaw1@gmail.com |
| T. Tamara Gauldin | | | X | Tamara.Gauldin@thehartford.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9